## Boone, et al, v. Robinson, et al.

(Decided January 24, 1913.)

### Appeal from Clark Circuit Court.

1. Boundaries—Jurisdiction of Equity to Settle Disputed Boundary.— The jurisdiction of equity to settle disputed boundaries is limited by the rule that equity has no jurisdiction where there is an adequate remedy at law; and this jurisdiction of equity to the establishment of a disputed boundary, exists wherever there is some peculiar equity superinduced by the acts of the parties, where there is a bona fide dispute as to the ownership of the soil, and where some portion of the premises is in the defendant's possession.

2. Boundaries—Jurisdiction of Equity to Reform Deed and Locate Boundary—Intention of Parties.—Where two joint owners of a lot, having a front of 38 feet and 5 inches, made a deed of partition under the mistaken belief that the lot was of the same width

throughout, when, in fact, it was only 35 feet and 5 inches wide on its rear boundary, equity will take jurisdiction to reform the deed and locate the boundary according to the intention and rights of the parties.

J. SMITH HAYS and J. SMITH HAYS, JR., for appellants.

JOHN M. STEPHENSON, for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Prior to 1908, J. W. Ried owned an undivided one-half interest in a lot fronting 38 feet and 5 inches on the east side of North Main street, in Winchester. The heirs of J. P. Stubblefield owned the other undivided half interest therein. By deed of partition, dated August 1, 1908, between the Stubblefield heirs, as parties of the first part, and J. W. Ried, as party of the second part, the owners undertook to divide said lot "so as to make what they consider an equal division thereof." In attempting to carry out that agreement, the Stubblefield heirs conveyed to Ried "the southern half of said property hereinafter described, to-wit, twenty (20) feet *running back the same width to an alley* about the same distance of 210 feet;" and Ried conveyed to the Stubblefield heirs " the other half, being the northern portion of said property hereinafter described, and containing 18 feet and 5 inches in front, and *running back the same width to an alley,* being about 210 feet." This deed was doubtless drawn upon the theory that the property was rectangular in shape, and 38 feet and 5 inches wide throughout its entire depth.

In January, 1909, however, and after Ried had begun to erect a partition fence between said lots, it was discovered for the first time, that while the original lot fronted 38 feet 5 inches upon North Main street, it had a width of only 35 feet and 5 inches upon the alley, and that it was, therefore, impossible for both lots to have their respective denominated widths throughout. In other words, if Ried's lot should be extended 20 feet in width throughout to the alley, it would leave the Stubblefield heirs a width of only 15 feet and 5 inches upon the alley, while their deed calls for 18 feet and 5 inches in width throughout, from the street to alley.

When the mistake was discovered, the Stubblefield heirs and Ried entered into a written agreement on January 18, 1909, which, after reciting that the parties then thought said lot was less than 38 feet and 5 inches

in the rear; that the line had not been definitely established; and, in view of the fact that Ried wanted to erect a partition in the building fronting on Main street, the parties agreed "that in the event said line is definitely established according to the provisions of said deed, and the partition proposed to be erected by said Ried is over that line on the property of the heirs of J. P. Stubblefield, deceased, said Ried agrees to remove said partition and place it on the line at his expense, and without expense to said Stubblefield heirs."

On December 5, 1910, the appellants, being part of the Stubblefield heirs, and the grantees of the remaining Stubblefield heirs, brought this action against the appellees, as the heirs of J. W. Ried, and the owners of his interest in said land, in which they set up the foregoing facts, alleging the mistake as to the width of the rear boundry of said lot, its discovery, the building of the partition by Ried, and the written agreement with respect thereto, and that the defendants were wrongfully setting up a claim to a small portion of plaintiffs' lot, which they had enclosed by said partition fence, and were thereby in possession of a triangle of plaintiffs' land fronting one foot and six inches on the alley, and extending to a point on Main street. The petition prayed that the court cause said lot to be surveyed, and said partition line as fixed by said deed of partition be properly located. The effect of the prayer is, that the deed be reformed so as to correct the contradictory description, and locate the division line accordingly. The circuit court sustained a demurrer to the petition; and upon plaintiffs standing by their petition, it was dismissed, and from that ruling the plaintiffs prosecute this appeal.

We have not been favored with a brief for the appellees, or an expression of opinion by the circuit judge as to the ground upon which his ruling was based. In the brief for appellants, however, it is stated that the point of the demurrer, as stated by counsel for appellees, was, that the petition did not allege a mistake at the time of the execution of the deed of partition; and, that being true, no reformation of the deed of partition could be made or had. In this, however, we think the circuit court was in error, since the petition not only alleges that the parties had attempted to divide the ground equally, by describing appellants' lot as "con-

taining 18 feet and 5 inches in front, and running back the same width to an alley," and the appellees' lot as containing, "20 feet, running back the same width to an alley," which was necessarily a mistake under the facts, as subsequently discovered, but it further alleges that said lot had a front of only 35 feet and 5 inches upon the alley, although they had proceeded upon the idea that it so fronted 38 feet and 5 inches, and "that said mistake was mutual between J. W. Ried and the heirs of Mrs. J. W. Ried (the Stubblefield heirs), and the deed, a copy of which is filed herewith, was executed while they were laboring under this mistake." The petition could have alleged the mistake in more definite terms; but when all the allegations of the petition are considered together, they fairly show that the parties made the deed while laboring under the mistake of fact that the original Stubblefield lot was 38 feet and 5 inches throughout its entire width, while in reality it was only 35 feet and 5 inches in width upon the alley. Furthermore, under the terms of the deed, appellants have as much right to the disputed boundary as the appellees have.

We have then a petition seeking to have the boundaries of a deed corrected, upon the ground that it had been executed through the mutual mistake of the parties. The jurisdiction of equity to settle disputed boundaries is limited by the rule that equity has no jurisdiction where there is an adequate remedy at law; but this jurisdiction of equity as to the establishment of a disputed boundary exists wherever there is some peculiar equity superinduced by the acts of the parties; where there is a bona fide dispute as to the ownership of the soil; and where some portion of the premises is in the defendant's possession. Wake v. Conyers 1 Eden, 331, 2 White & Tudor Lead. Cas. Eq., 850.

This general rule was recognized by this court in Fraley v. Peters, 12 Bush, 472, where the court, speaking through Judge Cofer, said:

"The chancellor had no jurisdiction originally of simple questions of boundary. He had jurisdiction where there was confusion of boundaries, but such jurisdiction did not extend to every dispute as to boundary. In such cases the law generally affords ample remedy; and hence it has been held that unless some peculiar equity intervenes of which a court of law can take no notice,

courts of equity have no jurisdiction. (1 Story's Equity, sec. 616.)

"In other words, there must be some equitable ground attaching itself to the controversy, such as fraud on the part of the defendant, by which a confusion of boundary has been produced, or there must be some relation between the parties which makes it the duty of one of them to preserve and protect the boundary, or it must be necessary in order to prevent a multitude of suits, or to prevent mischief otherwise irremediable, or the like. (ib., secs. 620, 621, 622.)

"There is in this case no charge of fraud, no relation between the parties which made it the duty of the appellee to preserve the boundary; there was no necessity for the intervention of the chancellor to prevent a multiplicity of suits or irremediable mischief. The case presented was only the ordinary one of a dispute between independent proprietors of adjoining lands claimed and held by the respective owners adversely to each other. The dispute might have been settled by a single suit at law, and so far as boundary was concerned presented no ground whatever for the intervention of the chancellor."

Again, in Scott v. Means, 80 Ky., 460, this court further said:

"The petition is in the nature of a bill to fix a controverted boundary, and of a bill of peace.

"The mere existence of a controversy about a boundary will not furnish ground for the exercise of the jurisdiction of a court of equity. There must be some peculiar equity superinduced, or in such a case the party will be left to the law for redress."

In the later case of Walker v. Leslie, 90 Ky., 648, we reaffirmed the general rule laid down in the cases above cited, in the following language:

"It seems to be a well settled rule, approved by this court in the case referred to and others, that existence of a controverted boundary between independent proprietors of adjoining lands by no means constitutes a sufficient ground for interposition of a court of equity to ascertain and fix that boundary, such cases being left to the proper redress at law. And to maintain such action in chancery there must be some equitable ground attaching itself to the controversy. Those grounds are: 1. Confusion of boundary occasioned by

fraud; 2. A relation between the parties which makes it the duty of one of them to preserve and protect the boundaries, and that by his neglect or misconduct the confusion of boundaries has arisen; 3. When an action in equity is necessary to prevent a multiplicity of suits. (- Story's Equity, secs. 619-21.)"

And in 5 Cyc., 952, the result of the cases upon the subject is formulated, as follows:

"The mere fact that a boundary line is in dispute is not of itself sufficient to confer jurisdiction on a court of equity, but there must become additional ground of distinct equity jurisdiction; and even where facts are averred which would authorize the interference of a court of equity to establish a disputed boundary that relief will not be granted when complainant is already in possession of the land."

If the petition in the case at bar merely sought to establish the boundary line between the lands of the parties, without any distinct equitable ground as a basis therefor, equity would not have jurisdiction of the case, because that question could be completely settled in a suit at law. But the relief here asked is based upon the ground of mutual mistake, which is a distinct ground of equity jurisdiction; and, that being true, as we must so treat it upon demurrer, the petition stated a cause of action. Under the facts there shown, appellants were entitled to have the division line so drawn as to give them that proportion of the disputed three feet, which 18 feet and 5 inches bears to 20 feet.

Judgment reversed for further proceedings.